## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

| | |
|---|---|
| RONALD WALKER, Individually on Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br> vs.<br><br>CONSTELLATION ENERGY GROUP, INC., MAYO A. SHATTUCK III, YVES C. DE BALMANN, ANN C. BERZIN, JAMES T. BRADY, JAMES R. CURTIS, FREEMAN A. HRABOWSKI III, NANCY LAMPTON, ROBERT J. LAWLESS, JOHN L. SKOLDS, MICHAEL D. SULLIVAN, EXELON CORPORATION, and BOLT ACQUISITION CORPORATION,<br><br>    Defendants. | Civil Action No. 11-cv-02165-WDQ<br><br><u>CLASS ACTION</u><br><br>**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF W.C. SMITH'S MOTION TO CONSOLIDATE RELATED ACTIONS AND APPOINT LEAD AND LIAISON COUNSEL** |
| W.C. SMITH, Individually on Behalf of Himself and All Others Similarly Situated,<br><br>    Plaintiff,<br><br> vs.<br><br>CONSTELLATION ENERGY GROUP, INC., MAYO A. SHATTUCK III, JAMES R. CURTISS, FREEMAN A. HRABOWSKI, III NANCY LAMPTON, MICHAEL D. SULLIVAN, JAMES T. BRADY, ROBERT J. LAWLESS, YVES C. DE BALMANN, JOHN L. SKOLDS, ANN C. BERZIN, EXELON CORPORATION, and BOLT ACQUISITION CORPORATION,<br><br>    Defendants. | Civil Action No. 11-cv-02437-WDQ |

## TABLE OF CONTENTS

I. INTRODUCTION ..................................................................................................1

II. BACKGROUND FACTS......................................................................................2

III. THE RELATED ACTIONS SHOULD BE CONSOLIDATED .........................5

IV. THE COURT SHOULD APPOINT PLAINTIFF'S PROPOSED LEADERSHIP
STRUCTURE........................................................................................................6

    A. The Work Robbins Umeda Has Done Investigating and Identifying
Potential Claims ........................................................................................8

    B. Robbins Umeda's Experience in Class Actions .......................................9

    C. Counsel's Ability and Willingness to Commit Adequate Resources.....10

    D. Counsel's Knowledge of the Applicable Law.........................................10

    E. The Court Should Appoint Mason as Liaison Counsel ........................11

V. CONCLUSION....................................................................................................11

# TABLE OF AUTHORITIES

**CASES**

*Breaux v. Am. Family Mut. Ins. Co.*,
    220 F.R.D. 366 (D. Colo. 2004) ................................................................................ 5

*Horn v. Raines*,
    227 F.R.D. 1 (D.D.C. 2005) ...................................................................................... 7

*In re Cable & Wireless, PLC Sec. Litig.*,
    217 F.R.D. 372 (E.D. Va. 2003) ................................................................................ 7

*Landis v. N. Am. Co.*,
    299 U.S. 248 (1936) ................................................................................................... 6

*MacAlister v. Guterma*,
    263 F.2d 65 (2d Cir. 1958) ........................................................................................ 7

*Mainstreet Collection, Inc. v. Kirkland's Inc.*,
    Nos. 4:09-CV-189-FL, 4:09-CV-199-FL, 2010 WL 3394693 (E.D.N.C. Aug.
    27, 2010) .................................................................................................................... 5

*Wright v. Krispy Kreme Doughnuts, Inc.*,
    232 F.R.D. 528 (M.D.N.C. 2005) .............................................................................. 6

**RULES**

Federal Rules of Civil Procedure
    23(g) ........................................................................................................................... 7
    42(a) ....................................................................................................................... 1, 5

**OTHER AUTHORITIES**

4 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* §9.35 (4th 2010) ...................... 7

9 C. Wright & Miller, *Federal Practice & Procedure* § 2381 (2nd ed. 1995) ............................... 6

*Manual for Complex Litigation* §20 (4th ed. 2004) ....................................................................... 6, 7

Plaintiff W.C. Smith ("Smith" or "Plaintiff"), by and through his undersigned counsel, respectfully submits this memorandum of law in support of his Motion to Consolidate Related Actions and Appoint Lead and Liaison Counsel (the "Motion").

## I. INTRODUCTION

Plaintiff is aware of two Related Actions[1] pending before this Court challenging the proposed acquisition of Constellation Energy Group, Inc. ("Constellation" or the "Company") by Exelon Corporation and its affiliates (collectively "Exelon") announced on April 28, 2011, whereby Constellation shareholders will receive 0.930 shares of Exelon common stock in exchange for each share of Constellation common stock they own, for an implied value of $38.59 per Constellation share (the "Proposed Acquisition"). Specifically, the plaintiffs in the Related Actions, individually and on behalf of similarly situated Constellation shareholders (the "Class"), assert claims for, among other things, violations of state law and sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9 promulgated thereunder.

For the reasons enumerated herein, Plaintiff respectfully requests that the Court consolidate the Related Actions and appoint Plaintiff's counsel, Robbins Umeda LLP ("Robbins Umeda"), as lead counsel ("Lead Counsel"), and Mason LLP ("Mason") as liaison counsel ("Liaison Counsel").

As the Related Actions involve common questions of law and fact, they are ripe for consolidation pursuant to Federal Rules of Civil Procedure 42(a) ("Rule 42"). Specifically, the Related Actions involve common questions of fact and law concerning Defendants' (as defined herein) violations of: (i) their state law fiduciary duties in connection with their attempts to sell Constellation for an unfair price and via an unfair process to Exelon; and (ii) federal securities laws in connection with their filing of a false and materially misleading Form S-4 Registration

---

[1] The term "Related Actions" refers to: *Walker v. Constellation Energy Group Incorporated, et al.*, Civil Action No. 11-cv-02165-WDQ, filed on August 4 2011; *Smith v. Constellation Energy Group, Incorporated, et al.*, Civil Action No. 11-cv-02437-WDQ, filed on August 30, 2011.

Statement with the SEC on June 27, 2011 (the "S-4").[2]  As such, consolidation is proper here pursuant to Rule 42, as it will avoid duplication of efforts, facilitate judicial economy, and ensure the orderly prosecution of plaintiffs' claims – with nominal risk of prejudice to Defendants.

This Court should also appoint Robbins Umeda as Lead Counsel and Mason as Liaison Counsel so as to assure the orderly prosecution of the consolidated action.  Plaintiff's chosen counsel, Robbins Umeda, has substantial experience litigating shareholder securities class actions and is well-qualified to serve as Lead Counsel.  The firm's wealth of experience includes many cases involving breaches of fiduciary duties and other corporate wrongdoing similar to that at issue in the Related Actions.  Robbins Umeda specializes in shareholder rights litigation, including the litigation of corporate takeovers and other complex cases on behalf of shareholders of publicly-traded companies throughout the nation, and is, without question, the law firm best qualified to represent the interests of the Class.  With regard to this litigation, Robbins Umeda is both willing and able to commit the resources necessary to prosecute this matter in a diligent and resourceful fashion.  Likewise, Mason, Plaintiff's Maryland counsel, has a distinguished reputation as a preeminent complex litigation law firm and will competently represent the interests of the Class in its role as Liaison Counsel.

For these reasons, set forth more fully below, Plaintiff respectfully requests that the Court consolidated the Related Actions, appoint Robbins Umeda as Lead Counsel, and appoint Mason as Liaison Counsel by executing the [Proposed] Order Consolidating Related Actions and Appointing Lead and Liaison Counsel submitted concurrently herewith.

## II.    BACKGROUND FACTS

Constellation is a Maryland corporation that, through its subsidiaries, supplies power, natural gas, and energy products and services for homes and businesses across the continental

---

[2]  The term "Defendants" refers to Mayo A. Shattuck III ("Shattuck"), James R. Curtiss, Freeman A. Hrabowski, III, Nancy Lampton, Michael D. Sullivan, James T. Brady, Robert J. Lawless, Yves C. De Balmann, John L. Skolds, Ann C. Berzin (collectively, the "Individual Defendants"), Constellation, Exelon, and Bolt Acquisition Corporation.

United States. ¶¶3, 11.[3] The Company has positioned itself to maintain strong financial performance and growth through the execution of numerous acquisitions and other strategic initiatives in recent years and its 2010 financial performance, especially the $14.3 billion it generated in revenues, indicates as much. ¶¶3, 29.

Despite the Company's promising outlook, on April 28, 2011, after negotiating *exclusively* with Exelon, Constellation and Exelon issued a joint press release announcing that the Individual Defendants agreed to sell the Company to Exelon for $7.9 billion. ¶49. Under the terms of the Proposed Acquisition, Constellation shareholders will receive 0.930 shares of Exelon common stock in exchange for each share of Constellation common stock they own, for an implied value of just $38.59 per Constellation share. *Id*. If the Proposed Acquisition is in fact consummated, Exelon shareholders will own approximately 78 percent of the combined company and Constellation shareholders approximately 22 percent of the combined company on a fully diluted basis. *Id*.

Although Exelon is paying a 16 percent premium based on the average closing price of both companies' stocks over the 20 day period preceding the April 28, 2011 announcement of the Proposed Acquisition, according to an April 28, 2011 article published by Bloomberg, "it is below the 19 percent average of 456 U.S. power company deals over the past five years." ¶51. The article goes on to state that "Exelon is paying 6.9 times earnings before interest, taxes, depreciation and amortization, compared with an average 7.2 times." *Id*. More troubling still is the lack of a "collar" on the deal to combat any fluctuation in the stock price of either Constellation or Exelon that will harm Constellation shareholders. ¶52. Thus, the Company and its shareholders are at the mercy of the value of Exelon shares at the "Effective Time" as defined

---

[3] All "¶__" or "¶¶__" references are to Smith's Shareholder Class Action Complaint for Breach of Fiduciary Duty and Violations of §14(a) and §20(a) of the Securities Exchange Act of 1934 and Rule 14a-9 of the U.S. Securities and Exchange Commission Promulgated Thereunder (the "Complaint"), filed on August 30, 2011.

in the Merger agreement, which may be affected by numerous factors unrelated to Constellation's worth and therefore have little or no relationship to the actual value of the Company. *Id*.

While Constellation shareholders are receiving inadequate value for their shares in this profitable and promising company, Company insiders will receive lucrative and prestigious benefits at the go-forward company. Defendant Shattuck, for instance, will become executive chairman of the combined company, and Exelon's current Chief Operating Officer and President, Christopher M. Crane ("Crane"), will become President and Chief Executive Officer of the successor company. ¶¶49-50. Additionally, both Shattuck and Crane will serve on the sixteen-member board of directors of the combined company, twelve members of which will be designated from Exelon's board of directors and four from Constellation's. *Id*.

Moreover, to the detriment of Constellation's shareholders, the Merger Agreement's terms substantially favor Exelon and are calculated to dissuade unreasonably potential suitors from making competing offers. *See* ¶¶54-63. In order to lock-up the Proposed Acquisition for Exelon, the Individual Defendants agreed, among other things: (a) not to solicit other takeover proposals (¶56); (b) to notify Exelon of any proposals, offers, or any overtures of interest from other potential suitors (including the identity of such suitors) (¶62); (c) to give Exelon "matching rights" with respect to any "superior proposal" received by the Company (*Id*.); and (d) to a "Termination Fee" of $200 million (¶55). All of these "defensive measures," taken together, represent a nearly insurmountable hurdle to other potential bidders.

On June 27, 2011, Exelon filed its S-4 with the SEC to solicit shareholder approval for the Proposed Acquisition. ¶64. As alleged in the Complaint, the Registration Statement omits material information about the Proposed Acquisition that must be disclosed to Constellation's shareholders to enable them to render an informed decision as to whether to exchange their shares in the Proposed Acquisition. ¶¶6, 78. This omitted information, if disclosed, would significantly alter the total mix of information available to the public shareholders of Constellation. ¶93.

The Registration Statement omits material information concerning, among other things: (i) the unfair sales process employed by the Individual Defendants to sell the Company to Exelon and only Exelon; (ii) Constellation's and Exelon's financial forecasts; (iii) the key inputs and assumptions underlying the fairness opinions provided by Constellation's financial advisors, Morgan Stanley & Co. Incorporated and Goldman Sachs & Co., as well as Exelon's financial advisors, Barclays Capital Inc., J.P. Morgan Securities LLC, and Evercore Group L.L.C. ¶¶64-77. This information was known to the Individual Defendants, or was within the Individual Defendants' control. ¶64.

Following their review of the false and materially misleading S-4, plaintiffs in the Related Actions filed actions before this Court alleging that, among other things, Defendants breached – or aided and abetted other Defendants' breaches of – their state law fiduciary duties by agreeing to sell Constellation at an unfair price via an unfair process and violated sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder in connection with the filing of the S-4. Now, in the interests of efficiency, and to ensure the vigorous prosecution of the claims contained in the Related Actions, Plaintiff filed the current Motion seeking to consolidate the Related Actions and have Robbins Umeda and Mason appointed as Lead and Liaison Counsel, respectively, for the consolidated action.

## III.   THE RELATED ACTIONS SHOULD BE CONSOLIDATED

Rule 42 of the Federal Rules of Civil Procedure provides that consolidation is appropriate when actions involve common questions of law or fact:

> If actions before the court involve a common question of law or fact, the court may: (1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay.

Fed. R. Civ. P. 42(a). Such a decision to consolidate is well within the discretion of the circuit court. *Mainstreet Collection, Inc. v. Kirkland's Inc.*, Nos. 4:09-CV-189-FL, 4:09-CV-199-FL, 2010 WL 3394693, at *1 (E.D.N.C. Aug. 27, 2010); *see also Breaux v. Am. Family Mut. Ins. Co.*, 220 F.R.D. 366, 367 (D. Colo. 2004) (explaining that the purpose of Rule 42(a) is "'to give

the court board discretion to decide how cases on its docket are to be tried so that the business of the court may be dispatched with expedition and economy while providing justice to the parties'") (quoting 9 C. Wright & Miller, *Federal Practice & Procedure* § 2381 at 427 (2nd ed. 1995)).[4]

Moreover, as Rule 42 plainly states, actions should be consolidated if it will avoid unnecessary costs or delay. Here, consolidation of the Related Actions is appropriate because it will avoid unnecessary costs and delay. The Related Actions assert similar claims on behalf of the same Class members, and are based on nearly identical legal theories and underlying facts. The Related Actions also assert similar claims and theories for relief, namely, that the plaintiffs and the Class were harmed by Defendants' violations of federal securities laws and breaches of fiduciary duty and that the Proposed Acquisition should be enjoined. In sum, consolidating the Related Actions will serve judicial efficiency by preventing unnecessary duplication of efforts, including briefing and arguing motions, initiating and conducting pretrial discovery, employing experts, arranging support services, and coordinating the massive task of evidence and document retention. *See Manual for Complex Litigation* ("*Manual*") §20 (4th ed. 2004). Consolidation of the Related Actions is, therefore, warranted under Rule 42(a).

## IV.   THE COURT SHOULD APPOINT PLAINTIFF'S PROPOSED LEADERSHIP STRUCTURE

Pursuant to the board authority of Rule 42(a), this Court has the power appoint Lead and Liaison Counsel. *See Wright v. Krispy Kreme Doughnuts, Inc.*, 232 F.R.D. 528, 529-30 (M.D.N.C. 2005). In making this decision, the Court has wide discretion. *Id.* at 530; *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936) (explaining that there is "power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants"). In complex cases such as these Related Actions, appointment of lead counsel imposes order on what otherwise might become an inefficient, if not unruly, proceeding.

---

[4] Here, as throughout, all emphasis is added and citations and footnotes are omitted, unless otherwise noted.

As a result, "it is now almost standard practice for the court to issue an order at an early stage, defining the responsibilities of … lead counsel and the organization of the plaintiffs' attorneys." 4 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* §9.35 (4th 2010). This is because the appointment of lead counsel has long been recognized as a means of promoting efficiency and avoiding delay, overlap, and duplication of effort. *See In re Cable & Wireless, PLC Sec. Litig.*, 217 F.R.D. 372, 379 (E.D. Va. 2003). As stated by one appellate court:

> The benefits achieved by consolidation and the appointment of general counsel, i.e., elimination of duplication and repetition and in effect the creation of a coordinator of diffuse plaintiffs through whom motions and discovery proceedings will be channeled, will most certainly redound to the benefit of all parties to the litigation. The advantages of this procedure should not be denied litigants in the federal courts because of misapplied notions concerning interference with a party's right to his own counsel.

*MacAlister v. Guterma*, 263 F.2d 65, 69 (2d Cir. 1958). The *Manual* also recognizes the benefits of promptly appointing a leadership structure of plaintiffs' counsel in complex multiparty litigation. *See Manual,* §10.22 ("[i]nstituting special procedures for coordination of counsel early in the litigation will help avoid" problems, including waste of time and money, confusion and misdirection of the litigation, and burden on the court). Thus, this Court has broad discretion in appointing a leadership structure.

In making such an appointment, "[t]he principle that guides the Court's decision is which counsel will best serve the interests of the plaintiffs." *Horn v. Raines*, 227 F.R.D. 1, 3 (D.D.C. 2005). Specifically, the Court should consider the following factors: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources counsel will commit to representing the class." Fed. R. Civ. P. 23(g); *Manual*, §10.224 (explaining that the court's responsibilities in appointing lead counsel include an assessment of counsel's qualifications, experience, competence, and commitment to prosecuting the action on behalf of plaintiffs).

As detailed below, consideration of these factors demonstrates that the appointment of Robbins Umeda as Lead Counsel and Mason as Liaison Counsel is in the best interests of the Class and should therefore be approved by the Court.

### A.  The Work Robbins Umeda Has Done Investigating and Identifying Potential Claims

Robbins Umeda thoroughly investigated the available public information before filing their complaints on behalf of Plaintiff.  During the investigation, the attorneys at Robbins Umeda, among other things, reviewed and analyzed the Company's filings with the SEC (including the S-4), press releases, the Merger Agreement, analyst reports, and the relationship between Constellation and Exelon.  The attorneys also determined that the Individual Defendants implemented and are maintaining onerous deal protection devices, including a termination fee payable by the Company to Exelon of $200 million if Constellation is to accept a competing bid, a no-solicitation provision, and matching rights, which, as previously mentioned, are specifically designed to preclude alternative and potentially higher value bids for the Company.

Based on its investigation, Robbins Umeda concluded that the Proposed Acquisition is the product of a conflicted and flawed sales process that offers Constellation shareholders inadequate value for their shares.  Indeed, the Complaint contains detailed allegations and claims against culpable officers and directors of Constellation for breaching their fiduciary duties to the Company's shareholders, and against Constellation and Exelon for aiding and abetting those breaches.  The Complaint describes, for example, that defendant Shattuck will continue as Executive Chairman of the Board of the combined company and that he will be joined by three other current members of the Board.  *See* ¶¶4, 79-81.  Additionally, the Complaint includes allegations regarding the materially misleading S-4 that Defendants filed to solicit shareholder approval of the Proposed Acquisition.  *See* ¶¶6, 64-78.  Thus, the Complaint demonstrates Robbins Umeda's exceptional skill and expertise in investigating facts and identifying crucial issues and claims.  As such this favor supports the appointment of Robbins Umeda as Lead Counsel.

## B. Robbins Umeda's Experience in Class Actions

Robbins Umeda has vast experience and success in handling shareholder litigation of this type, including claims for breach of fiduciary duty like the one before the Court. *See* Firm Resume of Robbins Umeda, attached as Exhibit A to the Declaration of Gary E. Mason in Support of Plaintiff's Motion ("Mason Decl."), Robbins Umeda has demonstrated its ability to efficiently, aggressively, and effectively litigate these types of actions and protect the interests of shareholders, while, in numerous cases (both alone and as part of a coalition of other counsel), securing millions of dollars of additional consideration as part of the eventual merger transaction.

Notably, within the last few years, Robbins Umeda attorneys have acted as lead or co-lead counsel in representing classes of public shareholders challenging the adequacy of disclosures and the value of consideration offered in several large corporate transactions. These include: (i) Chevron Corporation's $1.74 billion acquisition of Unocal Corp., in which Robbins Umeda obtained improved disclosures and an additional $500 million for the shareholder class; (ii) the $25.9 billion acquisition of Phelps Dodge Corporation by Freeport-McMoran Copper and Gold, Inc., in which Robbins Umeda secured disclosures of formerly non-public, material information regarding the merger terms prior to the shareholders' vote and succeeded in negotiating the creation of a multi-million dollar fund that would be paid out to the class in the event that certain Phelps Dodge assets were sold following the merger; (iii) the $17.7 billion acquisition of Albertsons, Inc. in which attorneys at Robbins Umeda ensured additional disclosures of material information ahead of the scheduled shareholder vote; (iv) the $857 million acquisition of Mid-State Bancshares in which Robbins Umeda eliminated the restrictive "no shop" and confidentiality provisions from the merger agreement and obtained improved disclosures; (v) the $13 billion acquisition of Electronic Data Systems Corp., in which attorneys at Robbins Umeda secured a $25 million dividend as part of the settlement; and (vi) the $1.6 billion acquisition of PETCO Animal Supplies, Inc. in which Robbins Umeda attorneys helped secure a $16 million common fund.

Courts have specifically praised Robbins Umeda's work in these types of cases. For example, in the Albertsons matter, Presiding Judge Williamson stated: "[t]hroughout the litigation, they have shown themselves to be capable and qualified to represent the Class" and "Class counsel is more than experienced and has the ability to bring this action. Class counsel has a nationwide reputation for handling shareholder derivative litigation, various class actions, and complex litigation." *Carmona v. Bryant, et al.*, No. CV-OC-0601251, Revised Memorandum Decision and Order on Plaintiff's Motion for Final Approval of Settlement at 23, 27 (Idaho Dist. Ct.-Ada Cnty. Jan. 23, 2007), attached as Exhibit B to the Mason Decl. As the above cases show, Robbins Umeda attorneys have an impressive record in litigating transactional cases to secure additional consideration for shareholders. Thus, this factor weighs heavily in favor of the appointment of Robbins Umeda as Lead Counsel.

### C. Counsel's Ability and Willingness to Commit Adequate Resources

In order to ensure that the Company's shareholders are best represented against the impressive collection of counsel on the other side of the bar, the class needs an aggressive, well-capitalized advocate willing to litigate this case effectively to its conclusion, up to and including trial, if necessary. Robbins Umeda has the qualifications to fulfill this important role. As detailed in its firm resumes, Robbins Umeda employs over twenty attorneys, including no less than five who are devoted solely to litigating challenges to mergers and acquisitions like this one. *See* Mason Decl., Exhibit A. Robbins Umeda can and will contribute all necessary resources for effective prosecution of the Related Actions. Accordingly, counsel's willingness to commit resources to protect the interests of Constellation shareholders further supports their appointment as Lead Counsel.

### D. Counsel's Knowledge of the Applicable Law

Robbins Umeda attorneys possess outstanding knowledge of the applicable law at issue in the Related Actions. Indeed, Robbins Umeda has successfully litigated scores of breach of fiduciary cases in courts around the country. By virtue of its extensive experience litigating breach of fiduciary duty cases, Robbins Umeda is well prepared to deal with and address the

legal issues confronting the parties. As such, this factor also weighs in support of the appointment of Robbins Umeda as Lead Counsel.

### E. The Court Should Appoint Mason as Liaison Counsel

Mason, Plaintiff's Maryland counsel, is the ideal choice as Liaison Counsel to compliment the efforts of Robbins Umeda. *See* Firm Resume of Mason, attached as Exhibit C to the Mason Decl. Gary E. Mason, founding partner of Mason, has been a member of the Maryland bar since 2001. Mason's litigation work in Maryland includes the successful resolution of an environmental class action arising from the largest oil spill in the history of the State of Maryland, *In re Swanson Creek Oil Spill Litig.*, No. 00-1429 (D. Md.) (lead counsel; $2.25 million settlement). Mr. Mason has serves lead roles on numerous class actions throughout the United States including *In re Google Buzz Privacy Litig.*, No. 5:10-cv-00672-JW (N.D. Cal.), where he served as court-appointed lead class counsel and secured a $8.5 million settlement. Mr. Mason received a Public Justice Achievement Award and national recognition for his work on litigation over defective polybutylene pipe, ultimately resulting in an unprecedented $950 million settlement. He was recognized by Washingtonian Magazine as one of the top forty lawyers in Washington, D.C. under the age of 40 in 1998 and Law Dragon identified Mr. Mason as one of "500 New Stars" in 2006. The Urban Justice Center honored him with an award for Litigation Excellence in 2009. Mason was recently recommended as a leading plaintiffs firm in Washington, D.C. in the 2011 *Guide to America's Leading Litigation Firms and Attorneys* (Benchmark: Litigation, 2011).

### V. CONCLUSION

For the forgoing reasons, Plaintiff respectfully requests that the Court consolidate the Related Actions and appoint Robbins Umeda as Lead Counsel and Mason as Liaison Counsel.

Dated: September 6, 2011                              MASON LLP

                                                                                 s/ Gary E. Mason
                                                                                 GARY E. MASON

Md. Bar #15033
1625 Massachusetts Ave., NW
Suite 605
Washington, DC 20036
Telephone: (202) 429-2290
Facsimile: (202) 429-2294

Attorneys for W.C. Smith and Proposed
Liaison Counsel for Plaintiffs

ROBBINS UMEDA LLP
BRIAN J. ROBBINS
STEPHEN J. ODDO
ARSHAN AMIRI
LAUREN E. ROSNER
600 B Street, Suite 1900
San Diego, CA 92101
Telephone: (619) 525-3990
Facsimile: (619) 525-3991

Attorneys for W.C. Smith and Proposed
Lead Counsel for Plaintiffs

GOLDFARB BRANHAM LLP
HAMILTON LINDLEY
Saint Ann Court
2501 N. Harwood Street, Suite 1801
Dallas, TX 75201
Telephone: (214) 583-2257
Facsimile: (214) 583-2234

Attorneys for W.C. Smith

648423